Case 1:17-cv-00244 Document 75 Filed on 05/13/19 in TXSD Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
May 13, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **KAREN YVONNE ROLLINS, et al.,** § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. B: 17-cv-244 |
| § | |
| **FRANCISCO JAVIER CALDERON, et al.,** § | |
| Defendants. § | |

## ORDER

On April 4, 2019, Plaintiff Karen Yvonne Rollins filed a motion to exclude portions of the expert testimony of Dr. Lars H. Reinhart ("Reinhart"). Dkt. No. 51. Dr. Reinhart is an expert witness retained by Defendants Francisco Javier Calderon and C.R. England, Inc. ("Defendants").

As to Dr. Reinhart, Rollins argues that the proffered expert testimony does not meet the standard for admissibility set out by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), and its progeny. Dkt. No. 51. The Defendants filed a response. Dkt. No. 35. This order is a ruling on a non-dispositive pretrial motion pursuant to 28 U.S.C. 636(b)(1)(A) and FED. R. CIV. P. 72(a).

After reviewing the record and the relevant case law, the Court **ORDERS** that the motion be denied in part and granted in part. Dr. Reinhart may testify concerning his re-creation of the accident. Furthermore, Dr. Reinhart may testify about the principles he applied regarding a patient's medical history and subjective complaints of pain in arriving at his ultimate conclusions in his report. Dr. Reinhart, however, may not speculate as to why Rollins' medical history may be incomplete nor may he speculate that Rollins has exaggerated her complaints of pain.

**I. Background**

The parties largely agree on one overarching point: on February 15, 2016, Calderon was driving a tractor-trailer that backed into a vehicle in which Rollins was a passenger. Rollins seeks to exclude two specific portions of Dr. Reinhart's report from evidence: (1) the testing he conducted on an exemplar vehicle to ascertain the force of the accident; and, (2) a summary of studies which found that patients involved in litigation had a higher propensity to misrepresent or falsely deny relevant pre-existing conditions. Accordingly, the Court will focus on these issues.

**A. Doctor Reinhart's Report**

Dr. Reinhart has a bachelor's degree in mechanical engineering from the University of Texas and a medical degree from the University of Texas – Southwestern Medical School. Dkt. No. 57-2, p. 2. He worked for thirteen years as an emergency room physician; he now works as a full-time consultant for Biodynamic Research Corporation, specializing in injury causation analysis. Id., p. 3. Rollins has not generally challenged Dr. Reinhart's credentials to serve as an expert witness; instead she has focused upon two subject areas, about which Dr. Reinhart plans to testify.

In determining the force of the impact, Dr. Reinhart did not have access to Calderon's or Rollins's vehicles, so he used exemplar vehicles, i.e. vehicles of the same model and age. Dkt. No. 57-2, pp. 11-13. He examined a trailer, similar to the one driven by Calderon, and measured the rear impact guard bar at the bottom rear of that trailer. Id. Furthermore, Dr. Reinhart examined photos of the damage to Rollins's 2012 Buick LaCrosse and obtained a similar LaCrosse to use for his analysis. Id, pp. 11-13.

Dr. Reinhart used data that he had concerning the speed of tractor-trailers when driving in reverse, both for instances where the driver merely released the clutch and when the driver pressed the accelerator. Dkt. No. 57-2, pp. 13-14. Dr. Reinhart applied an exemplar rear impact guard bar – of the same height and size as the one on Calderon's trailer – to his exemplar LaCrosse. Id., pp. 14-15. Dr. Reinhart was able to re-create damage that

2

"closely matched" the damage to Rollins's vehicle, as seen in the photos. Id. From his calculations, he determined that Calderon's "closing speed was approximately 4.4 miles per hour." Id, p. 16.

In determining whether this accident – according to the conditions found in his calculations – could have caused the injuries claimed by Rollins, Dr. Reinhart noted that he "must rely on the veracity and truthfulness of a patient's history with respect to a recent sustained injury or work-related disability claim." Dkt. No. 57-2, pp. 21-22. Dr. Reinhart further noted that several studies showed that "claimants involved in litigation" often "misrepresented or falsely denied relevant pre-existing conditions" such as "prior neck and back pain, history of heavy alcohol or illicit drug abuse, and previous psychological distress or illness." Id. While Dr. Reinhart does not outright accuse Rollins of misrepresenting her medical history, his ultimate conclusion – that the force of the crash was "not significant enough to be casual for their claimed injuries" – implies that Rollins's medical history is, at best, incomplete. Id, p. 23.

Dr. Reinhart concluded his report by stating that "in light of the accelerations and motions experienced by the Buick's occupants during the subject collision, the probability of any significant injury beyond self-limited transient musculoskeletal strains/sprains/soft tissue pains would be considered unlikely to have resulted from this collision." Dkt. No. 57-2, p. 25.

**B. Procedural History**

On April 4, 2019, Rollins filed a motion to exclude Dr. Reinhart from testifying as an expert witness as to two issues. Dkt. No. 51. Rollins argued that (1) Dr. Reinhart's testing with the exemplar vehicles is "not adequately similar to the conditions at the time of the wreck, making it of limited probative value and unduly confusing to the jury"; and (2) his statements concerning the propensity of some litigants to misrepresent their past medical history would unduly prejudice the jury, which is capable of judging Rollins's credibility. Id.

3

On April 11, 2019, the Defendants filed a response, arguing that (1) Dr. Reinhart's testing was "clearly substantially similar" to the conditions at the time of the accident; and, (2) federal and state courts have routinely permitted experts to testify concerning the possibility of pre-existing conditions and "secondary gain" – i.e., the propensity of plaintiffs to misremember or misrepresent their pre-existing conditions when they are involved with litigation.

**II. Applicable Law**

An expert witness may testify in a case, in the form of an opinion, provided they meet four criteria. FED. R. EVID. 702. Those four criteria require that: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Id.

The Supreme Court has stated that, pursuant to FED. R. EVID. 702, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. "The proponent of an expert's testimony need not prove the testimony is factually correct, but rather need only prove by a preponderance of the evidence the testimony is reliable." Paz v. Brush Engineered Materials, Inc., 555 F.3d 383 (5th Cir. 2009) (citing Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir.1998)).

The overriding question is whether the expert's testimony constitutes scientific knowledge. Daubert, 509 U.S. at 589-90. "Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." Daubert, 509 U.S. at 593.

The Supreme Court has given a non-exhaustive list of factors for the Court to consider in evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can or has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate in its operation; and (4) whether it is generally accepted in

the scientific community. Daubert, 509 U.S. at 593-94. However, these standards are "flexible" and may or may not be pertinent or relevant to assessing a particular expert's testimony in a particular case. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). "[N]ot every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equipment Corp., 394 F.3d 320, 325 (5th Cir. 2004) (citing Kumho Tire).

An expert, however, may not merely rest on his or her credentials and give a subjective opinion on relevant issues. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." Viterbo v. Dow Chemical Co., 826 F.2d 420, 424 (5th Cir. 1987). An expert must furnish "some objective, independent validation of [his] methodology[; t]he expert's assurances that he has utilized generally accepted [principles] is insufficient." Brown v. Illinois Cent. R. Co., 705 F.3d 531, 536 (5th Cir. 2013) (internal citations omitted).

### III. Analysis

In reviewing Dr. Reinhart's proposed expert testimony, the Court notes that its role is not to determine whether the testimony is the final word on the issue or how convincing it may be. Daubert, 509 U.S. at 596 (noting that "[v]igorous cross-examination [and] presentation of contrary evidence" are the "traditional and appropriate" means of attacking admissible evidence). Rather, the Court must ascertain whether Dr. Reinhart's testimony meets the minimum evidentiary standards for admissibility pursuant to Daubert and its progeny.

After reviewing the report, the Court concludes that part of Dr. Reinhart's proposed testimony meets this evidentiary standard. Dr. Reinhart may testify in full regarding his experimentation and re-creation of the subject accident in this case. Dr. Reinhart may also testify concerning the principles he applied regarding a patient's self-reported medical history and subjective complaints of pain and how those principles influenced his ultimate conclusions in this case. What Dr. Reinhart may not do is speculate as to why Rollins's self-

reported medical history may be incomplete or insinuate that she is malingering or exaggerating for secondary gain in this litigation.

### A. Accident Reconstruction

Dr. Reinhart's attempt to re-create the conditions of the accident to calculate the force created by the tractor trailer backing up meets the Daubert standard. At this stage of the proceedings, the Court's role is merely to determine whether Dr. Reinhart's principles and methodology are sufficiently reliable to be permitted into evidence; not to second-guess Dr. Reinhart's ultimate conclusion. Daubert, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").

Dr. Reinhart was not able to utilize the actual vehicles that were involved in the accident, so he used exemplar vehicles of the trailer and the Buick. Dkt. No. 57-2, pp. 11-16. He measured the height and size of the rear bar guard on the trailer and used a bar guard of the same dimensions to apply force to another Buick that was the same make, model, and year as the one that was involved in the accident. Id. Dr. Reinhart applied the force until the exemplar Buick was damaged in a way that "closely matched" the damage seen in photographs of Rollins's Buick after the accident. Id.

When an expert conducts an experiment to "simulate actual events," Daubert does not require that the conditions be precisely identical to the actual event, merely that they "be so nearly the same as to provide a fair comparison." U.S. v. Norris, 217 F.3d 262, 270 (5th Cir. 2000).

Rollins argues that the conditions of Dr. Reinhart's testing were not "adequately similar to the conditions at the time of the wreck," but does not actually list any conditions that were so different that it makes the result fundamentally unreliable. Given that Dr. Reinhart used vehicles that matched the vehicles involved in the accident and re-created the accident based on the narrative from the police officer's report, the Court finds that his re-creation was substantially similar enough to provide a fair comparison for the jury. The motion to exclude this testimony is denied. Any shortcomings in the analysis performed by

or conclusions reached by Dr. Reinhart, using these vehicles, are best left to cross-examination and for the jury's consideration.

### B. Secondary Gain

Dr. Reinhart's report included a discussion of "secondary gain." Rollins seeks to exclude this testimony as unduly prejudicial. The motion is granted in part and denied in part.

Based on the Court's reading of Dr. Reinhart's report, he discusses the issue of secondary gain in the context of why he does not always take a patient's reports of their prior medical history or their self-reported pain and symptoms at face value. Dkt. No. 57-2, pp. 21-22. In other words, when it comes to pre-existing conditions, Dr. Reinhart does not necessarily see the absence of proof as proof of absence. Dr. Reinhart relied on this principle in concluding that the force of the accident could not have caused the injuries claimed by Rollins and that any degenerative changes to her spine were a result of "normal work-related activities and activities of daily living, over time." Dkt. No. 57-2, p. 22.

In short, Dr. Reinhart may speak about general principles concerning pre-existing conditions and a patient's subjective complaints regarding pain and symptoms in discussing how he arrived at his ultimate conclusion in this case. Dr. Reinhart may also explain why he believes that any degenerative changes to Rollins's spine were the result of her daily living activities. Dr. Reinhart may not speculate, without specific factual evidence, that Rollins has failed to report a pre-existing condition or has deliberately exaggerated her pain and symptoms.

The Defendants cite several cases for the proposition that experts can testify to malingering and secondary gain. Dkt. No. 57, p. 8, n. 5 (citing Henderson v. Director, TDCJ-CID, 2013 WL 4811223 (E.D. Tex. 2013) (expert testimony regarding a death row inmate's possible malingering)); Mericle v. Secretary of Health and Human Services, 892 F. Supp. 843, 847 (E.D. Tex. 1995) (consulting expert testifying that plaintiff was exaggerating symptoms for secondary gain)); Lacy v. Navarro Cty. Sheriff's Office, No.

7

3-08-CV-0450-BD, 2009 WL 1160356, at *2 (N.D. Tex. Apr. 28, 2009) (expert concluded that prisoner was malingering to obtain prescription medications to "feel high or sedated."); Kie v. Williams, No. 3:15-CV-02304, 2016 WL 6208692, at *3 (W.D. La. Oct. 23, 2016) (pretrial ruling that defendants could introduce "evidence which draws into question the veracity of plaintiffs' subjective complaints and secondary gain as a contributing factor.")). The difference between the cited cases and the instant case was that the cited cases were based on specific evidence which demonstrated that the particular plaintiff in that case was actually engaged in malingering or exaggeration of symptoms. The cases do not stand for the proposition that a witness, expert witness or otherwise, can say that all plaintiffs tend to be malingerers or exaggerators.

Dr. Reinhart's report contains no facts demonstrating that Rollins is either malingering or exaggerating her symptoms. Accordingly, Dr. Reinhart may not speculate as to why Rollins's medical history or recall does not include any pre-existing back or spinal conditions. Dr. Reinhart also may not speculate that Rollins is exaggerating her symptoms to gain an advantage in this litigation.

**IV. Order**

The Defendant's motion to exclude the expert testimony of Dr. Lars H. Reinhart is denied in part and granted in part.

Dr. Reinhart may testify concerning his experiment to re-create the accident that is the subject of this case.

Dr. Reinhart may testify about the principles he utilizes when analyzing a patient's subjective recall of their prior medical conditions and their subjective complaints concerning pain and symptoms in reaching his ultimate conclusion. He may also testify as to why he believes that any degenerative changes to her spine were normal - i.e. the result of daily living and age – rather than the accident.

Dr. Reinhart may not speculate as to why Rollins's subjective recall of her prior medical conditions and her subjective complaints concerning pain and symptoms may be

8

inaccurate. Furthermore, he may not testify that Rollins has intentionally misrepresented her medical history or exaggerated her complaints of pain or her symptoms.

DONE at Brownsville, Texas, on May 13, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge