Case 1:17-cv-00244   Document 84   Filed on 05/20/19 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
May 20, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **KAREN YVONNE ROLLINS, et al.,** § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. B: 17-cv-244 |
| § | |
| **FRANCISCO JAVIER CALDERON, et al.,** § | |
| Defendants. § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On March 22, 2019, Defendants Francisco Javier Calderon and C.R. England, Inc. ("Defendants") filed a motion for summary judgment as to any claims of gross negligence made by Plaintiffs Karen Yvonne Rollins and Marco Abiel Salazar ("Plaintiffs"). Dkt. No. 44.[1] The motion did not seek summary judgment as to any claims of "ordinary" negligence.

Plaintiffs have filed a response; Defendants filed a reply. Dkt. Nos. 60, 65. The Court ordered the parties to file supplemental briefs regarding the applicability of the Texas Supreme Court's decision in Medina v. Zuniga, No. 17-0498, 2019 WL 1868012, at *8 (Tex. Apr. 26, 2019). Dkt. No. 70. All parties timely filed their supplemental briefs. Dkt. Nos. 71, 73.

After reviewing the record and the relevant case law, the Court recommends that the motion for summary judgment, as to "gross negligence," be granted. Even viewing the facts

---

[1] On September 10, 2018, Salazar passed away. Dkt. No. 27. There is no indication in the record that his death was related to the automobile accident at issue in this case. Rollins's counsel is still in the process of securing authorization from Salazar's estate to represent Salazar, but the estate has encountered various probate issues. As of right now, Salazar's estate is not represented by counsel in this case. Dkt. No. 48. In an abundance of caution, the Court is only recommending that summary judgment be granted for the gross negligence claim made by Rollins. Once Salazar's estate is represented in this case, however, summary judgment should also be granted for the claim of gross negligence made by his estate. The factual and legal underpinnings of Rollins's and Salazar's gross negligence claims are identical and the result should be as well.

1

in the light most favorable to Rollins, Calderon's actions did not objectively create an extreme risk of serious injury, which is a required element for a finding of gross negligence.

## I. Background

### A. Factual Background

In deciding a motion for summary judgment, the Court should view all facts in the light most favorable to the non-movant. Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc., 920 F.3d 958, 964 (5th Cir. 2019). Accordingly, this factual background is written in view of that mandate.

On February 15, 2016, Calderon was driving a tractor-trailer for C.R. England and was traveling to Little Farms Frozen Foods ("Little Farms") in Brownsville, Texas. Dkt. No. 60-2, pp. 13-14. As Calderon was traveling down Billy Mitchell Boulevard – at around 5:00 p.m. – he missed his left-hand turn to enter the loading dock for Little Farms. Id., pp. 13-14, 83-84.

Calderon was in the middle turn lane and needed to back up in order to complete the turn. Dkt. No. 60-2, pp. 13-14. Before he backed up, Calderon looked in both of his side view mirrors and honked his horn twice before shifting into reverse. Id, pp. 56-58. Calderon's trailer did not have reverse lights that would indicate to people behind him that he was backing up. Id., pp. 63-64. Calderon had been trained that he should step out of his vehicle to visually ensure that there were no vehicles or people directly behind his trailer in any blind spots. Dkt. No. 60-2, p. 15.

Calderon testified that he never stepped on the accelerator, but merely "eased" his foot off the brake. Id. As he backed up, Calderon kept checking his mirrors, but it took "a few seconds" before he saw that there was a Buick LaCrosse behind him and realized that a collision was about to occur. Id.

Rollins was driving the LaCrosse and testified at her deposition that she "froze" when she saw the tractor-trailer backing towards her. Dkt. No. 60-7, p. 29-31. Rollins further testified that she was "at a complete stop" when the tractor-trailer collided with the LaCrosse.

Id. Rollins stated that Salazar reached over and honked the horn to warn Calderon that the LaCrosse was behind him. Id.

Calderon exited his vehicle and approached the LaCrosse and asked the occupants – the Plaintiffs – if they needed an ambulance. Dkt. No. 60-2, pp. 57-58. Calderon reported the accident to the local authorities – police, fire, ambulance – as well as to his dispatcher. Id.

After the accident, Calderon took a required drug test, which came back negative. Dkt. No. 60-2, pp. 39-40.

The Plaintiffs' expert, Dr. Michael Freeman, calculated that Calderon's tractor-trailer was traveling approximately 7.5 miles per hour "at impact." Dkt. No. 69-1, p. 10.

**B. Procedural History**

On October 30, 2017, the Plaintiffs filed a complaint in the 444th District Court in Cameron County, Texas. Dkt. No. 1-1. The Plaintiffs alleged that Calderon negligently operated the tractor-trailer and also sought relief against C.R. England under a theory of respondeat superior. Id.

On December 12, 2017, Defendants timely removed the case to this Court, i.e. within 30 days of being served with the state court complaint. Dkt. No. 1.

On August 20, 2018, the Plaintiffs filed an amended complaint, which added theories that Calderon was grossly negligent and that C.R. England was negligent in its training and supervision of Calderon. Dkt. No. 24.[2]

On March 22, 2019, the Defendants filed a motion for summary judgment solely as to the claims of gross negligence. Dkt. No. 44. Defendants argue that there is no evidence in the record that Calderon's actions – backing up at a low rate of speed after checking his

---

[2] On April 10, 2018, the Plaintiffs filed their second amended complaint, which is the operative complaint. Dkt. No. 55. In the second amended complaint, Plaintiffs deleted their claim that C.R. England was negligent in its training and supervision, but continued to allege that Calderon negligently operated the tractor-trailer; that C.R. England was responsible under a theory of respondeat superior; and, that Calderon's action amounted to gross negligence. Id.

3

mirrors and honking his horn – created an "extreme risk or peril" of danger and injuries. Id., pp. 4-6.

On April 12, 2019, Plaintiffs filed a response brief, arguing that "[b]acking an 18-wheeler is objectively extremely dangerous because an enormous blind spot exists behind an 18-wheeler," creating an issue of material fact as to the issue of gross negligence. Dkt. No. 60.

On April 19, 2019, the Defendants filed a reply brief, reiterating that Calderon's actions did not meet the high standard for gross negligence. Dkt. No. 65.

On April 29, 2019, the Court ordered the parties to file supplemental briefs as to the applicability of Medina v. Zuniga, No. 17-0498, 2019 WL 1868012, at *8 (Tex. Apr. 26, 2019) to this case, specifically the effect of the Texas Supreme Court's discussion of gross negligence. Dkt. No. 70.

On May 1, 2019, Defendants filed their supplemental brief, arguing that Medina establishes that gross negligence is unavailable for "garden variety" automobile accidents, like the one at issue in this case. Dkt. No. 71.

On May 13, 2019, Plaintiffs filed their supplemental brief, arguing that the facts of this case are too dissimilar to the facts in Medina for that case to be applicable here. Dkt. No. 73. On May 15, 2019, the Defendants filed a reply brief. Dkt. No. 78.

## II. Applicable Law

### A. Diversity Jurisdiction

As relevant here, federal courts have jurisdiction over civil actions where (1) "the matter in controversy exceeds the sum or value of $75,000;" and, (2) the action is between citizens of different States. 28 U.S.C. § 1332(a)(1). No party disputes that diversity jurisdiction exists in this case. Dkt. No. 14, pp. 1-2.

In a case where jurisdiction is based on diversity of citizenship, the federal Court applies state substantive law and federal procedural law. Camacho v. Texas Workforce Comm'n, 445 F.3d 407, 409 (5th Cir. 2006). "Substantive law includes not only the factual

4

elements which must be found to impose liability and fix damages, but also the burdens of going forward with evidence and of persuasion thereon." Cimino v. Raymark Indus., Inc., 151 F.3d 297, 311 (5th Cir. 1998). "If no state court decisions control, [a federal court] must make an 'Erie[3] guess' as to how the Texas Supreme Court would apply state law." Beavers v. Metro. Life Ins. Co., 566 F.3d 436, 439 (5th Cir. 2009) (footnote added).

### B. Summary Judgment

Summary judgment is appropriate when the moving party has established that the pleadings, depositions, answers to interrogatories, admissions, and affidavits – if any – demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue is "real and substantial, as opposed to merely formal, pretended, or a sham." Bazan v. Hidalgo Cnty., 246 F.3d 481, 489 (5th Cir. 2001). A material fact is one that might influence the outcome of the suit. Id. Accordingly, a "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." Piazza's Seafood World, L.L.C. v. Odom, 448 F.3d 744, 752 (5th Cir. 2006).

"If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. Id.

Additionally, the Court must review all evidence in the light most favorable to the non-moving party. Piazza's Seafood World, 448 F.3d at 752. Factual controversies must be resolved in favor of the non-moving party, "but only when there is an actual controversy, that

---

[3] Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).

5

is, when both parties have submitted evidence of contradictory facts." Murungi v. Xavier Univ. of La., 313 Fed. App'x. 686, 688 (5th Cir. 2008) (unpubl.) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)). Thus, "in the absence of proof," the court cannot "assume that the nonmoving party could or would prove the necessary facts." Little, 37 F.3d at 1075. Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." Chacon v. Copeland, 577 Fed. App'x. 355, 360 (5th Cir. 2014) (unpubl.) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)) (internal quotations omitted).

Furthermore, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).

**C. Gross Negligence**

Under Texas law, gross negligence is defined as an act or omission "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others;" and also requires that the actor "has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11)(A)-(B). The first requirement – whether the defendant's actions created an extreme risk of harm – is known as the objective element and the second requirement – that the defendant was aware of that risk and chose to proceed in spite of that risk – is known as the subjective element. Reeder v. Wood Cty. Energy, LLC, 395 S.W.3d 789, 796 (Tex. 2012). Finally, the standard of proof to establish gross negligence is different than the standard to prove simple negligence.

**1. Objective Element**

As to the objective element, "[a]n act or omission that is merely ineffective, thoughtless, careless, or not inordinately risky is not grossly negligent." Reeder, 395 S.W.3d at 797. "Objectively, the defendant's conduct must involve an 'extreme degree of risk,' a

6

threshold significantly higher than the objective 'reasonable person' test for negligence." Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 22 (Tex. 1994) (superceded by statute on other grounds). "Determining whether an act or omission involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight." Id., at 22. "Evidence of simple negligence alone is not enough to establish gross negligence." Williams v. Crawford, No. 03-16-00696-CV, 2018 WL 1124306, at *14 (Tex. App. Mar. 2, 2018), supplemented, No. 03-16-00696-CV, 2018 WL 1614474 (Tex. App. Apr. 4, 2018). Gross negligence requires "more than momentary thoughtlessness, inadvertence, or error of judgment." First Assembly of God, Inc. v. Texas Utilities Elec. Co., 52 S.W.3d 482, 494 (Tex. App. 2001).

"Extreme risk is a function of both the magnitude and the probability of the anticipated injury to the plaintiff." Moriel, 879 S.W.2d at 22 (emphasis added). Thus, it is not satisfied by a relatively low probability of catastrophic harm, nor by a high probability of ordinary harm, but must create a high probability of serious injury to the plaintiff. Id.

As the Texas Supreme Court has explained, the focus must be on whether the act, viewed objectively, created an extreme risk of peril. For example, if a defendant is merely careless, but that carelessness "triggers a Rube Goldberg chain reaction" that creates extreme damage, the defendant was not grossly negligent. Moriel, 879 S.W.2d at 23. Conversely, if "a person fires a gun randomly into a crowd of schoolchildren, but the shooting only results in the destruction of a pair of sunglasses, the defendant would still be grossly negligent." Id, at n. 15. Thus, for the objective element, the Court must focus solely upon the nature of the act itself, not upon the actual consequences of that act.

### 2. Subjective Element

As to the subjective element of gross negligence, "the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." Diamond Shamrock Ref. Co., L.P. v. Hall, 168 S.W.3d 164, 173 (Tex. 2005). This can be

proved by either direct or circumstantial evidence. Turner v. Duggin, 532 S.W.3d 473, 487 (Tex. App. 2017).

If the plaintiff fails to establish either the objective or the subjective element of the gross negligence, the Court "need not further consider" the remaining element, and the claim should be dismissed. Medina, 2019 WL 1868012, at *8.

### 3. Standard of Proof

Gross negligence also involves a higher burden of proof. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 248 (Tex. 2008). A plaintiff may not receive exemplary damages in a case unless that plaintiff can show "by clear and convincing evidence" that the defendant's actions resulted from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a)-(b). This is a higher standard of proof than the "preponderance of the evidence" standard required for ordinary negligence. See McCullough v. Scarbrough, Medlin & Assocs., Inc., 435 S.W.3d 871, 911 (Tex. App. 2014) (noting that the clear and convincing evidence standard "falls between the preponderance standard of proof of most civil proceedings and the reasonable doubt standard of proof of most criminal proceedings.").

## III. Analysis

In determining whether summary judgment is appropriate, the Court must consider whether there is a genuine dispute of material fact that: (1) Calderon's actions, viewed objectively – without the benefit of hindsight – created an extreme risk of serious injury; and, (2) whether Calderon was subjectively aware of such risks, but consciously chose to ignore them. The Court must view the summary judgment motion in light of the "clear and convincing" evidentiary standard for gross negligence. See Liberty Lobby, 477 U.S. at 254-55 (to defeat a summary judgment motion, the plaintiff must provide sufficient evidence that the eventual fact-finder could find that he "proved his case by the quality and quantity of evidence required by the governing law.").

Given the evidentiary burden established by Texas law, Rollins has failed to demonstrate a genuine dispute of material fact as to gross negligence. As discussed below, the evidence – viewed in the light most favorable to Rollins – does not establish that Calderon's actions created an extreme risk of serious injury, as required by Texas law.

**A. Objective Standard**

As previously set out, Rollins must demonstrate facts showing – without the benefit of hindsight – that Calderon's actions created an inordinate risk of serious injury. Hogue, 271 S.W.3d at 248. Rollins has failed to do this. Viewing the evidence in the light most favorable to Rollins, it is undisputed that: (1) Calderon was operating a tractor-trailer, when he was attempting to turn left across traffic into his intended destination; (2) he missed his turn by several yards; (3) he had to reverse his tractor-trailer, so he could make the turn; (4) Calderon checked his mirrors and honked his horn to alert any drivers behind him that he, Calderon, planned to back up; (5) Calderon knew that there was a blind spot directly behind his trailer that he would not be able to see solely by using his side view mirrors; and, (6) that Calderon did not exit the vehicle to determine if there were any vehicles or pedestrians in his blind spot. Dkt. No. 60-2, pp. 13-14; 56-58, 63-64, 83-84. Furthermore, Rollins's expert, Dr. Freeman, calculated that Calderon was traveling approximately 7.5 miles per hour when he collided with the Plaintiffs' vehicle. Dkt. No. 69-1, p. 10.

A finding of gross negligence is fact-dependent; there is no clear legal line for what constitutes gross negligence and what does not. See Hylander v. Groendyke Transp., Inc., 732 S.W.2d 692, 695 (Tex. App. 1987), writ refused NRE (Sept. 16, 1987) ("In determining whether there is some evidence of gross negligence, we must look to all of the surrounding facts, circumstances and conditions, not just individual elements or facts."). A review of Texas caselaw, however, demonstrates that the facts of this case do not rise to the level of gross negligence.

There have been several cases where Texas courts have addressed the issue of gross negligence in the context of large trucks involved in automobile accidents.

9

In Williams v. Crawford, No. 03-16-00696-CV, 2018 WL 1124306, at *14-15 (Tex. App. Mar. 2, 2018), the defendant was driving an armored truck on a rainy day while eating sunflower seeds. Id.  The driver momentarily took his eyes off the road as he approached an intersection and rear-ended the plaintiff's vehicle, which was stopped at a red light. Id.  The Texas appellate court reversed a jury's finding of gross negligence, concluding that there was no evidence in the record that the driver was speeding or "driving at an unsafe distance, aggressively, or erratically before looking down." Id.  The Court found, by obvious implication, that the mere act of looking away did not amount to gross negligence. Id.

In Oney v. Crist, 517 S.W.3d 882, 894 (Tex. App. 2017), review granted, judgment vacated, and remanded by agreement[4] (Apr. 27, 2018), the defendant was driving a "spooling" truck that weighed between 32,000 and 52,000 pounds.  The driver was speeding, with his cruise control on, and it was raining. Id.  A pickup truck – that was two vehicles in front of the tractor-trailer – went out of control and the tractor-trailer driver applied his brakes and locked the truck's axles, veered to avoid crashing directly into the car in front of him, but still clipped that car. Id.

A jury found that the spooling truck driver was grossly negligent.  The Texas appellate court reversed that verdict.  The appellate court found that the defendant "acted negligently by following too closely and speeding in wet road conditions, with his cruise control set on seventy," but that those actions did not amount to gross negligence. Oney, 517 S.W.3d at 894.  The Texas Court concluded that the defendant's "failure to pursue the safest course available or to comply with traffic laws," did not rise to the level of gross indifference. Id.

In Matbon, Inc. v. Gries, 288 S.W.3d 471, 489 (Tex. App. 2009), the defendant was operating a tractor-trailer with a co-worker behind him operating a tractor-trailer and another vehicle following behind both of those trucks.  The defendant was traveling at 70 miles per

---

[4] The case was later dismissed based on a settlement agreement, but the Texas Supreme Court denied the parties' request that the court of appeals opinion be vacated. Oney v. Crist, Case No. 17-0317 (Tex. 2018).

hour when he reached over for a package of crackers and veered into oncoming traffic. Id. An oncoming vehicle swerved to avoid his tractor-trailer, but did not leave the roadway. The driver of that vehicle then overcorrected the steering wheel, crashing into the vehicle that was behind both tractor-trailers. Id.

The jury found that the defendant was grossly negligent. Again, the Texas appellate court reversed the verdict. The Texas court found that no reasonable juror could conclude that "there was an extreme degree of risk of serious injury to motorists following behind him when his action did not involve a collision of his vehicle with another vehicle or force another vehicle [ . . .] off the roadway." Matbon, 288 S.W.3d at 489. The Texas court went on to state that the Defendant's actions "were no doubt negligent and blatantly careless, but they simply did not as a matter of law rise to the level of extreme risk necessary to establish gross negligence." Id.

Similarly, in N. Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 128 (Tex. App. 2001), the defendant-driver drove a moving van and rear-ended a vehicle, paralyzing one of the passengers. The driver "was required by law to have a commercial driver's license to drive the van: but [he] had been refused a commercial driver's license because he could not meet the vision requirements; and [he] had failed the written exam for a commercial driver's license twice." Id., at 112.

The jury found that the defendant driver had been grossly negligent,[5] but the Texas appellate court overturned that decision. The appellate court noted that the defendant "was not driving appreciably faster than other vehicles on the highway, and a witness noticed

---

[5] In this case, and several others that are discussed in this report and recommendation, the jury found that the defendant had acted with "malice." Under the statutory scheme that was in effect at that time, "the statutory definition of 'malice' included an alternative gross negligence component identical to the current statutory definition of gross negligence." Ewing v. Iron Tiger Logistics, Inc., No. 3:10-CV-1211-O, 2011 WL 13229253, at *5, n. 3 (N.D. Tex. Apr. 5, 2011). Thus, those cases were analyzed under "the gross negligence definition of malice," making them applicable to this case. Id.

11

nothing erratic or unusual about his driving before the collision." Emmons, 50 S.W.3d at 128. It further held that the defendant's failure to notice the vehicle in front of him "was careless and had tragic consequences. However, behavior that is merely thoughtless or careless is not malicious or grossly negligent." Id.

At the same time, instances where Texas courts found have concluded that a truck driver was grossly negligent are instructive. In USA Truck, Inc. v. West, 189 S.W.3d 904, 906 (Tex. App. 2006), the defendant decided – upon arriving home – to back his tractor-trailer into his driveway, which was next to a four-lane highway. Id. By backing into the driveway, the defendant blocked all of the northbound traffic lanes on a dark and moonless night; the northbound lanes of traffic rounded a curve near the driveway, so oncoming traffic would have very limited visibility and ability to avoid the trailer. Id. When an oncoming car approached, the defendant flashed his high-beam headlights at him, ostensibly to warn him, but it also blinded the driver and the glare of the headlights kept the driver from being able to see the trailer. The driver crashed into the trailer and died on impact. Id. While the defendant had been driving for fourteen hours that day, regulations required that he take an eight hour break for every ten hours of drive time.

The Texas appellate court upheld the jury's finding of gross negligence, noting that the defendant's choice to block oncoming traffic on a dark and moonless night, on a road where oncoming traffic was coming out of a curve created an extreme risk of serious injury or death. Furthermore, the defendant's choice to drive while fatigued, in violation of federal regulations, also made his actions extremely risky.

Viewed objectively, the actions in West all but guaranteed an extreme risk of death. The defendant's actions created a scenario where: a vehicle traveling at highway speeds; at night; would round a curve; have all lanes of traffic blocked by a trailer; and would not have sufficient time to see the trailer or to brake and avoid a collision. Furthermore, the danger was exacerbated by the defendant's choice to flash his high-beam headlights at the driver, creating a glare that made it even more difficult to see the trailer. Given this example of the

behavior that must be present to create an extreme risk of serious injury; the facts of this case fall far short of that benchmark.

In light of these holdings, no reasonable juror could find by clear and convincing evidence that Calderon was grossly negligent in this case. Unlike the drivers in Oney and Mathbon, Calderon was traveling at a very low rate of speed; the Plaintiffs' expert calculated that the tractor-trailer was traveling 7.5 miles per hour when the accident occurred. If a driver who is speeding – with his cruise control on – on a rainy day is not grossly negligent, it is difficult to understand how a driver who is slowly reversing on a clear day can be grossly negligent. Oney, 517 S.W.3d at 894. Like the defendants in Emmons and Williams, Calderon may have been careless, in not keeping a proper lookout for other vehicles on the road, but careless behavior does not rise to the level of gross negligence. Emmons, 50 S.W.3d at 128.

The fact that Calderon should have known better than to backup blindly, in spite of his training and experience, is not enough to sustain a claim of gross negligence. "Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence." Phillips v. Super Servs. Holdings, LLC, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016). The fact that Calderon had time to consider his actions, but exercised poor judgment is not enough to sustain a claim of gross negligence. See Hylander v. Groendyke Transp., Inc., 732 S.W.2d 692, 695 (Tex. App. 1987), writ refused NRE (Sept. 16, 1987) (truck driver's conscious decision to continue driving on a flat tire did not support a claim of gross negligence).

Calderon's actions may have been "thoughtless, careless, and risky. But any driver knows that our roads are replete with thoughtless, careless, and risky drivers. Gross negligence can be supported only by an extreme degree of risk, not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." Medina, 2019 WL 1868012, at *7 (emphasis original; internal quotation marks

13

omitted) (quoting Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 922 (Tex. 1998)).

In sum, no reasonable juror could find by clear and convincing evidence that Calderon's actions created an extreme risk of serious injury and rose above mere carelessness. For that reason, summary judgment is appropriate as to the claim of gross negligence.

Moreover, because Rollins has not shown a genuine dispute of material fact as to the objective element of gross negligence, the Court need not consider whether Rollins has met the subjective element. Medina, 2019 WL 1868012, at *7.

### IV. Recommendation

The Defendants' motion for summary judgment should be granted as to the claim of gross negligence by Plaintiff Karen Yvonne Rollins. Dkt. No. 44.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. Battle v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting those findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except upon grounds of plain error. Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas, on May 20, 2019.

_____
Ronald G. Morgan
United States Magistrate Judge